UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| L.C. GOLIDAY, JR., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:11CV729 JCH |
| ) | |
| GKN AEROSPACE-ST. LOUIS ) | |
| AEROSPACE, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on April 30, 2012. (ECF No. 36). This matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff L.C. Goliday ("Plaintiff" or "Goliday") began working for Defendant GKN Aerospace North America, Inc. ("Defendant" or "GKN") in January 2001. (Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Defendant's SUMF"), ECF No. 38, ¶ 2, citing Ex. A, Deposition of Plaintiff, p. 34). Plaintiff is black. (Id., ¶ 1, citing Ex. A, p. 15). On August 29, 2007, Plaintiff was promoted to Operations Manager in Composites, effective September 3, 2007. (Id., ¶ 3, citing Ex. A, pp. 50, 54; Ex. B, Letter to Plaintiff from Daniel Mikofsky). Plaintiff received a salary increase effective March 3, 2008. (Id., ¶ 20, citing Ex. A, p. 151; and Ex. G, Letter to Plaintiff from Gary D. Schuster).

As Operations Manager, Plaintiff's supervisor was Bart Weihl, Vice President/General Manager of Composites. (Id., ¶ 4, citing Ex. A, pp. 109-10; Ex. C, Deposition of Bart Weihl, pp. 100-01). In November 2008, Weihl reassigned Plaintiff back to a Team Leader position. (Id., ¶ 6, citing Ex. A, pp. 78-79; Ex. C, pp. 6, 102-03). According to Defendant, Weihl removed Plaintiff as

Operations Manager because Weihl believed Plaintiff was a weaker Operations Manager as compared to the other Operations Managers in terms of getting results and overall performance. (Id., ¶ 10, citing Ex. C, pp. 36-37, 42-43, 56, and 100-02). According to Plaintiff, however, he was demoted from his position because he refused to give George Allen, a black employee, a poor rating. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), ECF No. 39, p. 1). It is unclear from the record what, if any, effect this rating would have had on Allen's employment. Plaintiff also states that three white employees who were also Operations Managers were less qualified than he was, and that Weihl only had problems with black Team Leaders. (Id., pp. 2, 3). When Plaintiff was moved from Operations Manager to Team Leader, his base salary was not changed. (Defendant's SUMF, ¶ 7, citing Ex. A, p. 103; Ex. C, pp. 102-03).

In November 2008, Weihl discharged Operations Manager Jeff Oathout because Weihl questioned whether Oathout had the ability to perform as an Operations Manager. (Id., ¶ 11, citing Ex. B, p. 103). Oathout is white. (Id., ¶ 12, citing Ex. A, p. 79; and Ex. B, pp. 103-04).

As a Team Leader, Plaintiff reported to Operations Manager Bill Pierson. (Id., ¶ 13, citing Ex. D, Deposition of Charles W. Pierson, p. 12; and Ex. E, Declaration of Charles W. Pierson, ¶ 3). According to Plaintiff, Pierson told Plaintiff and Henry Allen, a black employee, that they needed to report to work on time despite the fact they had not reported late to work. (Plaintiff's Response, p. 4). Pierson noted on Plaintiff's and Allen's evaluations that they needed to report to work on time and that reporting to work late in the future would not be tolerated. (Id.). According to Plaintiff, a white employee named Reginald Saunders was frequently reporting to work late or missing work and was not disciplined. (Id.).

According to Defendant, Pierson pulled the "gate rings" (i.e., recordings of the dates and times when employees enter and exit the facility) of all the Team Leaders who reported to him,

including Plaintiff and Saunders. (Defendant's SUMF, ¶ 14, citing Ex. A, pp. 155, 157-58; Ex. D, pp. 8, 30-33; and Ex. E, ¶ 9). Pierson had conversations with Plaintiff about ensuring that he and the people who reported to him were accurately keeping track of their time in AutoTime, the company's time-tracking system. (Id., ¶ 16, citing Ex. D, pp. 35-38, 47-49). Pierson took no disciplinary action against Plaintiff for not accurately recording time in AutoTime. (Id., ¶ 17, citing Ex. A, pp. 175-76; and Ex. D, pp. 47-49). Pierson also spoke with Saunders about ensuring that his AutoTime was correct, and Pierson documented this counseling in Saunders's 2010 Performance Development Plan. (Id., ¶ 18, citing Ex. D, pp. 11, 40-41; and Ex. E, ¶¶ 5, 11-12).

Plaintiff also alleges Weihl treated Plaintiff differently after Plaintiff's demotion. (Plaintiff's Response, p. 3). According to Plaintiff, Weihl harassed Plaintiff by "calling him continuously on the phone all night," "sitting one [sic] the parking lot looking into the building," and "coming in to check on him at various times at night." (Id.).

Plaintiff received a salary increase effective March 2, 2009. (Defendant's SUMF, ¶ 21, citing Ex. A, p. 152; and Ex. H, Letter to Plaintiff from Charles Pierson). In March 2010, Plaintiff did not receive a salary increase. (Id., ¶ 22, citing Ex. A, pp. 152-53; Ex. D, pp. 43-44; and Ex. I, Letter to Plaintiff from Charles Pierson). According to Defendant, Plaintiff did not receive a raise at this time because Plaintiff's current salary was in the upper portion of the salary range for his job position. (Id.).

On January 14, 2010, Plaintiff filed a joint Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"). (First Amended Complaint, ECF No. 18, ¶ 4). In this Charge, Plaintiff states he was demoted "because [he] refused to give a black employee an unfair rating" and that he has "been subjected to continuing harassment and scrutiny" since his demotion. (Charge of Discrimination, ECF

No. 37-1). On January 4, 2011, Plaintiff filed an Amended Charge of Discrimination reiterating those allegations and also stating that he is "disciplined for being late based on gate rings, while certain white individuals are frequently late but receive no discipline." (Amended Charge of Discrimination, ECF No. 37-2).

Plaintiff filed his initial Complaint against Defendant on April 25, 2011. (See ECF No. 1). Plaintiff's First Amended Complaint contains five counts[1]: discrimination on the basis of race in violation of 42 U.S.C. § 1981, discrimination on the basis of race and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), discrimination on the basis of race in violation of the Missouri Human Rights Act ("MHRA"), retaliation in violation of Title VII, and retaliation in violation of the MHRA. As noted above, Defendant filed its Motion for Summary Judgment on April 30, 2012.

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must

---

[1] Plaintiff's First Amended Complaint incorrectly states it contains four counts.

set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

**I.     Claims Under 42 U.S.C. § 1981**

Because Plaintiff lacks direct evidence of discrimination, Plaintiff's remaining § 1981 claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir. 1996). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Harris v. Hays, 452 F.3d 714, 717 (8th Cir. 2006). Once Plaintiff has established a prima facie case of discrimination, the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for the challenged action. Id. at 718. If Defendant articulates such a reason, the burden of production shifts back to Plaintiff to establish the proffered reason is a mere pretext for discriminatory animus. Id. (citation omitted).

In order to establish a prima facie case under § 1981, Plaintiff must show the following: "(1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004) (citation

omitted). "One way for the [plaintiff] to establish the second element, the defendant's intent to discriminate, is to show that he was treated differently from similarly situated nonmembers of the protected class." Holman v. Coca-Cola Enterprises, Inc., No. 4:05CV1032, 2006 WL 2460795, at *3 (E.D. Mo. Aug. 23, 2006) (citations omitted).

### A. Failure-to-Promote Claims

In his First Amended Complaint, Plaintiff alleges he applied for management-level positions in 2005 and 2006 but was not promoted. (First Amended Complaint, ¶¶ 12, 13). Defendant argues Plaintiff's failure-to-promote claims are untimely because they were not filed within four years of the challenged actions. See Jackson v. Homechoice, Inc., 368 F.3d 997, 999 (8th Cir. 2004) (finding the statute of limitations for § 1981 claims related to the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" is four years).

The statute of limitations on an employee's § 1981 claim premised on the failure to promote begins to run on the date the employee was allegedly passed over for promotion. Neish v. City of Chicago, 299 F.Supp.2d 866, 869 (N.D. Ill. 2004); Hollinger-Haye v. Harrison Western/Franki-Denys, 729 F.Supp. 1397, 1399 (D.D.C. 1990); Nurse v. City of New York, 735 F.Supp. 69, 71 (S.D.N.Y. 1990). Thus, the four-year statute of limitations on Plaintiff's § 1981 failure-to-promote claims began to run in 2005 and 2006, and the time for filing those claims expired before Plaintiff filed this action on April 25, 2011. Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 claims for failure-to-promote must therefore be granted.

### B. Remaining Claims

Plaintiff also alleges he was demoted in 2008 because of his race and that he was denied training, denied a bonus, disciplined, and paid less than other Operations Managers because of his race. (First Amended Complaint, ¶¶ 22, 25).

Plaintiff has failed to establish a prima facie case of racial discrimination under § 1981 because he has not shown Defendant had the intent to discriminate on the basis of race. Plaintiff asserts he was demoted because he refused to give a black employee a poor rating. Plaintiff also states that Weihl only had problems with black Team Leaders. Even accepting these factual allegations as true, Plaintiff has still failed to show Defendant had the intent to discriminate against Plaintiff because of Plaintiff's race. Additionally, Plaintiff has failed to present evidence that similarly situated employees outside his protected class in the same circumstances were treated less harshly. Plaintiff states that white employees less qualified than him were employed as Operations Managers, but Plaintiff provides no factual support for this claim. Plaintiff states he was treated more harshly and monitored more closely by Weihl and Pierson than his white counterparts, but again, Plaintiff provides no factual support for these claims aside from detailing Weihl and Pierson's actions towards him. Plaintiff also states that a white employee was not disciplined for reporting to work late, but Plaintiff has not provided any evidence that he was ever disciplined for reporting to work late; rather, the record showing that Pierson simply told Plaintiff that he needed to report to work on time.

In response, Defendant has presented evidence that Plaintiff's demotion from Operations Manager to Team Leader was motivated solely by Plaintiff's job performance. Defendant also presented evidence that, at the same time that Plaintiff was demoted, a white Operations Manager was fired. Additionally, Defendant presented evidence that Plaintiff received salary increases in 2008 and 2009, and that Plaintiff failed to receive a salary increase in 2010 because he was already earning more than other employees with the same job title.

Even assuming that Plaintiff has established a prima facie case of racial discrimination, Plaintiff has not shown that Defendant was likely motivated by a discriminatory reason or that Defendant's explanation of its actions was unworthy of credence. See Riser v. Target, 458 F.3d 817, 820 (8th

Cir. 2006). While Plaintiff may not agree with Defendant's arguably intrusive or overly hands-on management style, ineffective management does not rise to the level of actionable discrimination. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir.1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). Defendant's Motion for Summary Judgment as to Plaintiff's remaining § 1981 claims must therefore be granted.

## II.   Claims Under Title VII

Title VII prohibits discrimination against an employee with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1). "The elements of a Title VII disparate treatment claim and a § 1981 claim are identical." Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). Claims of racial discrimination in employment are therefore analyzed applying the same standards under both Title VII and § 1981. Id. Because Plaintiff lacks direct evidence of discrimination, Plaintiff's Title VII claim is also analyzed under the McDonnell Douglas burden-shifting framework. Riser, 458 F.3d at 819.

### A.   Claim for Failure to Receive a Bonus

Plaintiff alleges that "[i]n November, 2009, and thereafter," he was denied a bonus. (First Amended Complaint, ¶ 31). As noted above, however, Plaintiff did not allege in his Charge of Discrimination nor in his Amended Charge of Discrimination that he was denied a bonus, a raise, or any other pay increase.

"[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996). To exhaust her remedies, a Title VII plaintiff must timely file her charges with the EEOC and receive a "right to sue" letter from the EEOC. Id. (citing 42 U.S.C. § 2000e-5(b), (c), (e)). The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are "like or reasonably related" to that claim, in federal court. Id.

Plaintiff failed to exhaust his administrative remedies with regards to his claims that Defendant allegedly refused to provide Plaintiff with a bonus by failing to include any allegations regarding a bonus or raise in his Charge or Amended Charge. See Shannon, 72 F.3d at 684 (employee failed to exhaust her administrative remedies for her Title VII failure-to-promote claim where her charges focused on discriminatory treatment she allegedly received in her employer's apprenticeship program). Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim for his failure to receive a bonus must therefore be granted.

### B.   Remaining Claims

#### 1.   Racial Discrimination

Since Plaintiff's claims of racial discrimination under § 1981 and Title VII are identical, the Court's previous analysis of Plaintiff's § 1981 racial discrimination claim is equally applicable to Plaintiff's Title VII racial discrimination claim. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim  for discrimination must also be granted.

**2.     Harassment**

To prove a claim of hostile work environment based on race, Plaintiff must establish that (1) he is a member of a protected group; (2) he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. Malone v. Ameren UE, 646 F.3d 512, 517 (8th Cir. 2011) (citing Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 892 (8th Cir. 2005)).

Conduct of others in a workplace "affects a term, condition, or privilege of employment" under Title VII only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A court considers the conduct "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Singletary, 423 F.3d at 892 (internal quotations omitted); see also Harris, 510 U.S. at 21–22. All of the circumstances are relevant, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Here, Plaintiff has failed to show that he was subjected to race-based harassment, that the harassment was because of race, and that the harassment affected a term, condition, or privilege of his employment. First, any harassment allegedly experienced by Plaintiff was limited to close scrutiny of his job performance by Weihl and Pierson and did not include any race-based threats or offensive statements. Plaintiff makes the bare assertion that this scrutiny was more severe than the scrutiny afforded to white Team Leaders, but Plaintiff offers no factual support for this claim. Furthermore, Defendant has presented evidence that any close monitoring Plaintiff experienced was identical to that of all other Team Leaders, including the white Team Leader that Plaintiff singled out as receiving

special treatment. Second, Plaintiff has not shown that any harassment he allegedly experienced was because of his race. Again, Defendant has presented evidence that white and black Team Leaders were similarly treated by Plaintiff's superiors. Finally, none of the harassment allegedly suffered by Plaintiff affected a term, condition, or privilege of his employment. Plaintiff does not assert that his job performance was impeded by Weihl and Pierson's scrutiny, and Plaintiff has not shown that he suffered any job-related punishment due to this scrutiny. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim for harassment must also be granted.

### 3. Retaliation

In the absence of direct evidence, the McDonnell Douglas burden-shifting framework also governs retaliation claims under Title VII. Carrington v. City of Des Moines, Iowa, 481 F.3d 1046, 1050 (8th Cir. 2007). To establish a prima facie case, a plaintiff must show: (1) he engaged in protected conduct; (2) a reasonable employee would have found the challenged action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. Id.

"[C]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case." Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (quoting Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994)). An adverse employment action must include a material change in employment status--a reduction in title, salary, or benefits. Id.

Here, with regards to several of his allegations, Plaintiff has not made a prima facie case of retaliation because he did not suffer a materially adverse employment action in response to engaging in any protected conduct. The only protected activity that Plaintiff alleges he engaged in was the filing of a Charge of Discrimination with the EEOC and the MCHR on January 14, 2010, and an Amended Charge of Discrimination on January 4, 2011. Thus, any employment actions taken by

Defendant prior to January 14, 2010, cannot be considered retaliation for filing the initial Charge. Accordingly, any failure to promote Plaintiff prior to January 2010 and Plaintiff's demotion in November 2008 do not constitute adverse employment action in response to Plaintiff's filing of his Charge of Discrimination.

Additionally, any allegedly harassing actions taken by Weihl and Pierson do not rise to the level of materially adverse employment actions. Although Plaintiff claims Weihl called him "continuously on the phone all night," sat in the parking lot "looking into the building," and "[came] in to check on him at various times at night," none of these actions resulted in a material change in Plaintiff's employment status. (Plaintiff's Response, ECF No. 39, p. 3). Similarly, while Plaintiff alleges Pierson "monitored [Plaintiff] more closely than other white employees," "pulled Plaintiff's gate rings," and "told him that he needed to report to work on time," none of these actions resulted in a material change in Plaintiff's employment status. (Id.). All of these actions "describe[] nothing 'more disruptive than a mere inconvenience.'" Ledergerber, 122 F.3d at 1144 (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)); see also Flaherty v. Gas Research Inst., 31 F.3d 451, 457 (7th Cir. 1994) (holding a semantic change in title and a "bruised ego" did not constitute adverse employment action where pay, benefits and level of responsibility remained the same); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989) (finding "public humiliation" is not sufficient to establish age discrimination because "public perceptions were not a term or condition of [the plaintiff's] employment").

Therefore, the only employment action taken by Defendant that could be considered materially adverse is the denial of a raise in March 2010. Even assuming Plaintiff has made a prima facie case with regards to this claim, however, Defendant has shown a legitimate, nondiscriminatory reason for the challenged action: Defendant has presented evidence that Plaintiff failed to receive a raise because

Plaintiff was in the upper portion of the salary range for his job position. The burden of production then shifts back to Plaintiff to establish that Defendant's explanation is a mere pretext for discriminatory animus. Plaintiff has failed to present any evidence that Defendant's reason for denying Plaintiff a raise was a pretext for racial discrimination. Thus, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim for retaliation must also be granted.

### III.   Claims Under the MHRA

#### A.   Claim for Failure to Receive a Raise

As noted above, Plaintiff did not mention in his Charge or Amended Charge filed with the EEOC and MCHR that Defendant allegedly refused to provide Plaintiff with a bonus.

To initiate a claim under the MHRA a party must timely file an administrative complaint with MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter. Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) (citing Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994); MO. REV. STAT. §§ 213.075, 213.111(1) (1996)). Exhaustion of administrative remedies entitling a claimant to bring a cause of action "requires a claimant to give notice of all claims of discrimination in the administrative complaint." Id. at 630-31 (quoting Tart, 31 F.3d at 671). The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination. Id. at 631.

Plaintiff's Charge and Amended Charge only concerned his demotion in 2008 and the monitoring of his "gate rings." Any alleged failure of Defendant to provide Plaintiff with a bonus is outside the scope of any investigation that reasonably could have been expected to result from the initial Charge of Discrimination, and Plaintiff has therefore failed to administratively exhaust this claim. See id. (employee failed to exhaust her administrative remedies for her MHRA claim of

retaliation by discipline where her charge was solely for retaliatory discharge).  Defendant's Motion for Summary Judgment as to Plaintiff's MHRA claim for his failure to receive a bonus must therefore be granted.

### B. Remaining Claims

#### 1. Race Discrimination

Section 213.055.1(a) of the MHRA provides that it is unlawful for an employer "[t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability."  MO. REV. STAT. § 213.055 (1999).

While Missouri courts are guided by both Missouri and federal law in deciding cases under the MHRA, the protections of the MHRA are not identical to those found in federal statutory schemes, and Missouri has adopted a different definition of "discrimination" that in some respects offers greater protection to workers than does federal law.  Hill v. Ford Motor Co., 277 S.W.3d 659, 664 (Mo. 2009).  Under Missouri law, it is sufficient if consideration of a protected characteristic contributed to the unfair treatment.  Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007).

To establish a prima facie case of discrimination in the workplace under the MHRA, an employee must satisfy four elements: (1) she was a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees outside her protected class.  Marez v. Saint-Gobain Containers, Inc., 740 F.Supp.2d 1057, 1067 (E.D. Mo. 2010) (citing Buchheit, Inc. v. Missouri Comm'n on Human Rights, 215 S.W.3d 268, 277 (Mo. Ct. App. 2007)).

A plaintiff may prove allegations of disparate treatment by demonstrating that she was treated less favorably than similarly situated employees outside the plaintiff's protected class. Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 568–69 (8th Cir. 2000). For discriminatory discipline claims, "[e]mployees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.'" Id. (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)).

Here, Plaintiff has failed to make a prima facie case of discrimination in the workplace under the MHRA because he has not shown he was treated differently from similarly situated employees outside his protected class. Plaintiff alleges he was wrongfully demoted to Team Leader from Operations Manager based on his race, but a white Operations Manager was fired at the same time that Plaintiff was demoted. Furthermore, Plaintiff's demotion occurred slightly more than a year after he received a promotion, lending credence to Defendant's contention that Plaintiff's demotion was performance-related.

Additionally, Plaintiff also alleges his hours were monitored more closely after his demotion than his white counterparts and that he was disciplined for arriving late to work while Saunders, a white Team Leader, was not. Defendant has presented evidence, however, that the hours of all Team Leaders were closely monitored, that other Team Leaders (including Saunders) were also admonished to arrive at work on time, and that any reminders to Plaintiff to arrive to work on time were not accompanied by any punishment. Thus, even if Plaintiff was treated differently than other Team Leaders, he suffered no adverse employment action as a result. Defendant's Motion for Summary Judgment as to Plaintiff's claim for discrimination on the basis of race in violation of the MHRA must therefore be granted.

**2.     Retaliation**

Section 213.070.2 of the MHRA provides that it is unlawful for an employer "[t]o retaliate...against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." MO. REV. STAT. § 213.070 (1999). "Retaliation for opposing discrimination or for filing a complaint constitutes discrimination under the MHRA and, like other forms of discrimination, is proved by showing the elements required by the MHRA." Hill, 277 S.W.3d at 665. Therefore, in order to prove retaliation in violation of the MHRA, a plaintiff must show: (1) she complained of discrimination; (2) the employer took an adverse action against her; and (3) a causal relationship between the complaint and the adverse employment action. Smith v. Hy-Vee, Inc., 622 F.3d 904 (8th Cir. 2010) (citing Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 245 (Mo. Ct. App. 2006)).

As noted above, Plaintiff has not made a prima facie case of retaliation under the MHRA with regards to several of his allegations because he did not suffer a materially adverse employment action in response to complaining of discrimination. Plaintiff first complained of discrimination when he filed a Charge of Discrimination with the EEOC and the MCHR on January 14, 2010. Thus, any employment actions taken by Defendant prior to January 14, 2010, cannot be considered retaliation for filing the initial Charge. Accordingly, any failure to promote Plaintiff prior to January 2010 and Plaintiff's demotion in November 2008 do not constitute adverse employment action in response to Plaintiff's filing of his Charge of Discrimination. Additionally, as discussed above, any allegedly harassing actions taken by Weihl and Pierson do not rise to the level of materially adverse employment actions.

The only employment action taken by Defendant that could be considered materially adverse is the denial of a raise in March 2010. As noted above, even assuming Plaintiff has made a prima

facie case with regards to this claim, Defendant has presented evidence that Plaintiff failed to receive a raise because Plaintiff was in the upper portion of the salary range for his job position. Plaintiff has failed to present any evidence that Plaintiff's filing of a Charge of Discrimination caused or contributed to Defendant's decision to deny a raise to Plaintiff in March 2010. Thus, Defendant's Motion for Summary Judgment as to Plaintiff's claim for retaliation in violation of the MHRA must therefore be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 36) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice**.** An appropriate Judgment will accompany this Memorandum and Order.

Dated this 13th day of July, 2012.

                                          /s/Jean C. Hamilton
                                          UNITED STATES DISTRICT JUDGE